**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ACP GP, LLC, | : | CIVIL ACTION NO. 16-2697 (JLL) |
| Plaintiff, | : | **O P I N I O N** |
| v. | : | |
| PUTNAM COUNTY MEMORIAL HOSPITAL, et al., | : | |
| Defendants. | : | |

**LINARES, District Judge**

The plaintiff, ACP GP, LLC (hereinafter, "ACP"), brought this action to recover damages for the alleged breach of a factoring agreement in New Jersey state court. The action was removed to this Court pursuant to 28 U.S.C. § 1332(a) by the five original defendants: Putnam County Memorial Hospital (hereinafter, "PCMH"); Jerry Cummings and Cindy Cummings, who are former officers of PCMH; and Howard Luscan and Paula McCormack, who are current trustees of PCMH. (See dkt. 1 at 1–3; dkt. 1-1 at 11.)[1]

PCMH, which is deemed to be a citizen of Missouri, is now the only defendant remaining in the action. PCMH moves: (1) pursuant to Federal Rule of Civil Procedure (hereinafter, "Rule") 12(b)(2) to dismiss all of the claims asserted against it for lack of personal jurisdiction; or (2) in the alternative, pursuant to Rule 12(b)(6) to dismiss the

---

[1] The Court will refer to documents by the docket entry numbers and the page numbers imposed by the Electronic Case Filing System.

common law fraud claim asserted against it. (See dkt. 8 through dkt. 8-3; dkt. 21; dkt. 21-1.) ACP opposes the motion. (See dkt. 17 through dkt. 17-2.)[2]

The Court will resolve the motion upon review of the papers and without oral argument. See L.Civ.R. 78.1(b). The Court presumes that the parties are familiar with the factual context and the procedural history of the action. For the following reasons, the Court will (1) deny the part of the motion concerning dismissal of all claims asserted against PCMH for lack of personal jurisdiction, and (2) grant the part of the motion concerning dismissal of the common law fraud claim asserted against PCMH.

## BACKGROUND

ACP and PCMH entered into a factoring agreement, under which (1) ACP made three separate monetary advances totaling approximately $600,000 to PCMH, and (2) PCMH agreed to assign certain accounts receivable to ACP in exchange. ACP alleges that PCMH breached the agreement by (1) failing to instruct the third-party debtors for those accounts to direct their payments to a bank account controlled by ACP, (2) comingling the payments that should have been delivered to ACP with other PCMH funds, and (3) failing to deliver any payments at all in order to satisfy the agreement with ACP. (See dkt. 1-1 at 12–14.) As a result, ACP asserts causes of action against PCMH for an accounting, breach of contract, breach of the implied covenant of good faith and

---

[2] Luscan and McCormack initially joined with PCMH on the motion to dismiss, but the claims asserted against Luscan and McCormack were subsequently dismissed by stipulation. (See dkt. 23.) The Court will terminate the part of the motion concerning relief sought on behalf of Luscan and McCormack in the order that will be issued with this opinion. However, the Court will refer to the motion in this opinion as if it had been filed by PCMH alone.

fair dealing, promissory and equitable estoppel, breach of fiduciary duty, conversion, and common law fraud. (See dkt. 1-1 at 20–33.)

## ARGUMENTS

I. **Personal Jurisdiction**

    A. **Clause In Agreement Stipulating To Jurisdiction In New Jersey**

The factoring agreement contains the following clause:

> Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, including an action in tort, shall, if [ACP] so elects, be instituted in any court sitting in [New Jersey], in the city which [ACP's] chief executive office is located, or if none, any court sitting in [New Jersey] (the "Acceptable Forums"). [PCMH] agrees that the Acceptable Forums are convenient to it, and irrevocably submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue.

(Dkt. 17-2 at 50; see id. at 31 (describing ACP as the purchaser, PCMH as the seller, and New Jersey as the chosen state).)

    B. **Specific Personal Jurisdiction**

The Court finds that specific jurisdiction exists in New Jersey over the nonresident corporate defendant, i.e., PCMH, for the purposes of the action, despite PCMH's alleged minimum contacts with New Jersey. First, the claims asserted by ACP against PCMH unquestionably relate to PCMH's contacts with ACP in New Jersey. See Daimler AG v. Bauman, 134 S.Ct. 746, 754–55 (2014); Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007). PCMH initiated contact with ACP to obtain money advances from ACP, and

PCMH must have been well aware that ACP was based in New Jersey. Furthermore, the factoring agreement contains the clause that unambiguously sets forth that New Jersey is the chosen jurisdiction for any legal proceedings that may arise from any disputes concerning the agreement. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (stating a contract clause setting forth a certain jurisdiction for the maintenance of legal proceedings is prima facie valid and enforceable unless enforcement would be unreasonable under the circumstances). Therefore, PCMH could reasonably expect to be sued in New Jersey by ACP if a dispute arose.[3]

Second, the maintenance of claims in a New Jersey federal court concerning the alleged breach of a contract entered into with an entity that is deemed to be a New Jersey citizen, i.e., ACP, does not offend traditional notions of fair play and substantial justice. See Daimler AG, 134 S.Ct. at 754–55; Marten, 499 F.3d at 296. PCMH's argument that the clause concerning jurisdiction is unenforceable — because it is unreasonable and unjust due to PCMH's difficult financial circumstances — is without merit. (See dkt. 8-1 at 25.) Again, the clause specifying jurisdiction in New Jersey was unambiguous. Furthermore, PCMH was (1) represented by counsel when the factoring agreement was negotiated, reviewed, and subsequently executed, and (2) advised by that same counsel

---

[3] PCMH asserts that "ACP is not even a New Jersey entity" because "ACP is a Delaware LLC." (See dkt. 21 at 9.) That assertion is not correct. See VICI Racing, LLC v. T-Mobile USA, Inc., 763 F.3d 273, 282 (3d Cir. 2014) (stating that limited liability companies are deemed to be citizens of the states in which all of their members are citizens). (See dkt. 1 at 2 (PCMH asserting in its own notice of removal that ACP's members are citizens of New York or New Jersey).)

that the entire factoring agreement was valid and enforceable. (See dkt. 17 at 5–6; dkt. 17-1 at 1–2; see also dkt. 17-1 at 4 (opinion letter from PCMH's counsel stating that it indeed "acted as counsel to [PCMH] with respect to the negotiation and execution" of the factoring agreement, and that the contents "are binding . . . and enforceable").) In addition, the agreement was executed on behalf of PCMH by sophisticated individuals, i.e., officers and trustees from PCMH. (See dkt. 17-2 at 52–54.) Also, PCMH's alleged difficult financial circumstances existed well before it entered into the factoring agreement — indeed, that is why it sought monetary advances from ACP — and thus PCMH cannot argue that it is now experiencing difficult circumstances that have recently arisen that make the maintenance of this New Jersey action unreasonable. Thus, the Court rejects the argument by PCMH that the clause concerning New Jersey jurisdiction "was not the result of negotiation" or is "proof of ACP's unfair exploitation." (See dkt. 8-1 at 25; dkt. 21 at 11.)

Therefore, the Court will deny this part of the motion. In view of this disposition, the Court will not address whether there is general personal jurisdiction over PCMH in New Jersey.

## II. Common Law Fraud

### A. Relevant Facts

The Court will quote the relevant allegations from the complaint concerning the claim for common law fraud:

> 34. As a condition of and in furtherance of the Factoring Agreement, on two different occasions, [PCMH] arranged for two of its representatives . . . to provide individual "Validity Guarantees" (the "Guarantees") so as to obligate

each of the Guarantors, personally, with respect to certain representations contained in the Guarantees obligations and certain obligations under the Factoring Agreement and the subject Accounts and proceeds thereof.

35. Specifically, on or about November 19, 2015, in connection with the execution of the Factoring Agreement and "[t]o induce [ACP] to purchase accounts of [PCMH]," Guarantees were entered into and executed by [PCMH's] then COO, Jerry Cummings, and his wife and [PCMH's] then CEO, Cindy Cummings. True and correct copies of each of those Guarantees, executed by Jerry Cummings and Cindy Cummings, are annexed [to the complaint].

36. On information and belief, shortly after the Factoring Agreement was entered into, the Cummings Defendants were both forced to resign their positions with [PCMH].

37. Consequently, on information and belief, ACP required and [PCMH] agreed to provide additional Guarantees to be executed by officials who continued to be employed by [PCMH].

38. On information and belief, the [PCMH] officials designated by [PCMH] to execute such Guarantees were Defendant Luscan, the then Chairman of [PCMH's] Board of Trustees, and Defendant McCormack, the then Secretary of [PCMH's] Board of Trustees.

39. Both Luscan and McCormack executed such Guarantees on or about December 21, 2015. True and correct copies of each of those Guarantees, executed by Luscan and McCormack are annexed [to the complaint].

40. [On] information and belief, the final version of the Guarantees actually executed by Luscan and McCormack were altered by [PCMH] and/or Luscan and McCormack, or their representatives or agents, in an apparent attempt to modify the individuals' personal obligations pursuant to the Guarantees.

41. Insofar as ACP determines that fraudulent inducement or other misconduct occurred in connection with the alteration and execution of the Guarantees, ACP intends to hold [PCMH] . . . responsible for all remedies available to ACP related to same.

. . . .

81. . . . ACP has been and will be harmed as a result of the fraud, misrepresentations, concealment and/or other deceitful conduct of Luscan, McCormack and [PCMH], in connection with the unilateral alterations of the Luscan and McCormack Guarantees in an attempt to eliminate Luscan and McCormack's personal obligations arising from such guarantees.

82. Such representations and other conduct was false and/or misleading, and was reasonably and detrimentally relied on by ACP in entering into the Luscan and McCormack Guarantees and continuing to honor ACP's obligations under the Factoring Agreement after the original guarantors (the Cummings Defendants) were no longer employed by [PCMH].

83. ACP has been injured as a result of the foregoing fraudulent conduct on the part of Defendants [PCMH], Luscan and McCormack.

(Dkt. 1-1 at 18–19 & 28–29.)

### B. Rule 12(b)(6)

It is not necessary for the Court to restate the standard for resolving a motion made pursuant to Rule 12(b)(6). See Green v. Coleman, 575 Fed.Appx. 44, 46 (3d Cir. 2014) (setting forth standard; citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)); Mariotti v. Mariotti Bldg. Prods., Inc., 714 F.3d 761, 764–65 (3d Cir. 2013) (setting forth standard; citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); Am. Corporate Soc'y v. Valley Forge Ins. Co., 424 Fed.Appx. 86, 88–89 (3d Cir. 2011) (setting forth standard; citing Iqbal and Twombly); Fowler v. UPMC Shadyside, 578 F.3d 203, 209–12 (3d Cir. 2009) (setting forth standard; citing Iqbal and Twombly).

### C. Economic Loss Doctrine

PCMH argues that the fraud claim is barred by the economic loss doctrine due to the presence of the overlapping allegations and requests for relief underlying the claim for breach of contract. (See dkt. 8-1 at 18–19; dkt. 21 at 5–7.) ACP offers nothing in response to this line of argument. (See generally dkt. 17 at 4–13; see also dkt. 21 at 6 (PCMH noting in its reply that ACP did not respond to this "substantive [defect] which [was] raised in [PCMH's] original motion to dismiss").)

7

The Court holds that PCMH is correct that the fraud claim is barred on this ground. A fraud claim that alleges economic damages and essentially arises from an alleged breach of a contractual promise is barred by the economic loss doctrine, because the economic expectations between the parties to a contract are not afforded further protection by tort remedies. See Berkery v. Verizon Commc'ns, Inc., No. 15-3766, 2016 WL 4410067, at *2 (3d Cir. Aug. 19, 2016); Cioni v. Globe Specialty Metals, Inc., No. 14-3404, 618 Fed.Appx. 42, 46–47 (3d Cir. 2015); Sunshine v. Reassure Am. Life Ins. Co., 515 Fed.Appx. 140, 144–45 (3d Cir. 2013); Werwinski v. Ford Motor Co., 286 F.3d 661, 679–81 (3d Cir. 2002). The remedies available under contract law will provide redress to ACP for any alleged economic loss caused by PCMH's failure to perform its contractual promises. Therefore, the Court will grant this part of the motion.

Given this disposition, the Court will not address the other arguments raised by PCMH in support of dismissal of the fraud claim. However, the Court notes that one particular argument raised by PCMH — that ACP's alleged reliance on the altered guarantees was neither plausible nor reasonable (see dkt. 8-1 at 17–18) — goes to the merits of the fraud claim, and thus would be more appropriate for a motion for summary judgment.

## CONCLUSION

For the aforementioned reasons, the Court will (1) deny the part of the motion concerning dismissal of all claims asserted against PCMH for lack of personal jurisdiction, and (2) grant the part of the motion concerning dismissal of the common law fraud claim asserted against PCMH. The defendants will be directed to answer, or to present other defenses or objections to, the remaining claims by October 11, 2016. See Fed.R.Civ.P. 81(c)(2). The Court will enter an appropriate order.

    JOSE L. LINARES
    United States District Judge

**Dated:** September 19, 2016